FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2017 AUG -3  AM 9: 33

MICHAEL MCEVOY, on behalf of himself
and others similarly situated,

      Plaintiff,

Case No.: 3:17-cv-891-J-32MCR

JURY TRIAL DEMANDED

APOLLO GLOBAL MANAGEMENT, LLC,
a  Delaware  limited  liability  company,
GARETH TURNER, individually, and MARK
BEITH, individually,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, MICHAEL MCEVOY, individually and on behalf of himself and all others similarly situated, by his attorney, alleges the following based on the investigation of his counsel, except as to allegations specifically pertaining to Plaintiff, which are based on his personal knowledge.

## NATURE OF THE ACTION

1.    This is a class action on behalf of employee investors (the "Employee Investors") who, by virtue of their current and/or former employment status with CEVA Logistics, by and through defendant Apollo Global Management, LLC, purchased minority interests of restricted stock in an entity that ultimately came to be known as CEVA Investments Limited.  The class is seeking to recover damages caused by Defendants' fraudulent orchestration and implementation of a corporate restructuring in the Spring of 2013 (the "2013 Restructuring") that resulted in the Employee Investors' individual monetary losses totaling in excess of €14,000,000.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1332(d)(2)(a) and (b) as the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs, and Michael McEvoy is a citizen of a State different from Defendants. Upon information and belief, other putative class members are citizens or subject to a foreign state, and Defendants are citizens of a State.

3.      Venue is properly vested in this Court under 28 U.S.C. § 1391 as the damages suffered by Michael McEvoy occurred in Duval County, Florida and, therefore, the causes of action alleged herein accrued in Duval County, Florida.

## PARTIES AND RELEVANT ACTORS

4.      Plaintiff, Michael McEvoy ("Plaintiff") is a former employee of CEVA Logistics (as defined below) residing in Duval County, Florida who was previously employed by TNT (as defined below) by and through its North American operations located at TNT's Jacksonville, Florida headquarters prior to the acquisition of TNT by Apollo Global Management, LLC (as defined below).

5.      Non-party, CEVA Investments Limited (f/k/a Louis Topco Limited) is now known as CIL ("CIL").  Until the 2013 Restructuring (as defined above), CIL directly and indirectly owned 99.9% of the shares of Non-Party CEVA Group, PLC ("CEVA Group").  At all times relevant to this Complaint, CEVA Group was the holding company for the CEVA Logistics operating entities that employed the Employee Investors. (The CEVA Logistics operating entities owned by CEVA Group are collectively referred to herein as "CEVA Logistics").

6.      Upon information and belief, CIL was a holding company that, by and through ownership of shares of CEVA Group, was the immediate parent of CEVA Group and existed for

the purpose of reducing risks to its shareholders and exercised complete dominion and control over CEVA Group and CEVA Logistics.

7.      Upon information and belief, CEVA Logistics is one of the world's largest non-asset based freight management and supply chain logistics companies, conducting logistics and freight management business from approximately 1000 locations in 160 countries. CEVA Logistics' worldwide operations are the product of the acquisition and amalgamation by Apollo Global (as defined below) in 2007, of TNT Logistics ("TNT"), a global contract logistics company based in Hoopdorf, Netherlands, and EGL, Inc. ("Eagle") a global freight management company based in Houston, Texas.

8.      Defendant, Apollo Global Management LLC ("Apollo Global") is a limited liability company formed under the laws of the state of Delaware and has offices at 9 West 57th Street, New York, New York 10019.  Defendant, Apollo Global, upon information and belief, as of March 31, 2013, had complete dominion and control over CIL and CEVA Group by virtue of Apollo Global being the majority shareholder of CIL.[1]  Upon information and belief, at all times relevant to the allegations contained in this Complaint, Apollo Global exercised complete dominion and control over CIL and CEVA Group from its offices in New York, New York.

9.      Defendant, Gareth Turner ("Turner") was, upon information and belief, at all times relevant to this Complaint, a director of CIL and CEVA Group, who resides in New York, New York.  As well, upon information and belief, at all times relevant to this Complaint, Turner was

---

[1] Upon information and belief, Apollo Global controlled CIL through the majority interests of AP VI CEVA Holdings, L.P., AlpInvest Partners Beheer 2006, L.P., AAA Guarantor Co-Invest VI (B), L.P., and Louis Cayman Second Holdco, Ltd. (the "Apollo Shareholders"), all of whom were controlled by Apollo Global.

employed by Apollo Global.  Upon information and belief, at all times relevant to the allegations contained in this Complaint, Turner took all relevant actions while in New York, New York.

10.     Defendant, Mark Beith ("Beith") was, upon information and belief, at all times relevant to this Complaint, a director of CIL, who resides in New York, New York.  As well, upon information and belief, Beith was employed by Apollo Global.  Upon information and belief, at all times relevant to the allegations contained in this Complaint, Beith took all relevant actions while in New York, New York.

11.     Non-party, Stanley Parker Jr., ("Parker") was, upon information and belief, a senior partner of Apollo Global in New York, New York, at all times relevant to this Complaint.  Parker was also a director of CEVA Group.  Upon information and belief, Parker's employment with Apollo Global terminated in the middle of 2014.  Upon information and belief, at all times relevant to the allegations contained in this instant action, Turner and Beith took direction from Parker.

12.     Non-party, CEVA Holdings, LLC ("CEVA Holdings") is a Republic of Marshall Islands limited liability company.  Upon information and belief, CEVA Holdings, as a result of the 2013 Restructuring, owns 99.9% of CEVA Group and is a mere continuation of CIL.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), and 23(b)(1)(3), on behalf of a class consisting of current and former employees of CEVA Logistics, the Employee Investors (as defined above) who owned restricted Class A shares of stock in CIL on or before March 31, 2013.  Excluded from the class of Employee Investors are Defendants, the officers and directors of CIL, members of their immediate families, and their legal representatives, heirs, successors and assigns, the officers and directors of CEVA

Holdings, members of their immediate families, and their legal representatives, heirs, successors and assigns, and the officers and directors of Apollo Global.

14.     The members of the Employee Investors are numerous, and geographically diverse across the United States and the world so that joinder is impractical.  Indeed, upon information and belief, Plaintiff believes that the number of Employee Investors members is greater than 300. Members of the Employee Investors may be identified by records of CEVA Group, CIL, and Apollo Global or their transfer agents and may be notified of the pendency of this action by mail.

15.     Plaintiff's claims are typical of the claims of the other members of the Employee Investors in that all Employee Investors have been damaged by Defendants, which caused members of the Employee Investors to lose the value of their restricted stock through the 2013 Restructuring and the subsequent fraudulent valuation of the Employee Investors' restricted stock.

16.     Plaintiff will fairly and adequately protect the interests of other members of the Employee Investors.  To assist him, Plaintiff has retained counsel. Plaintiff is not aware of any interest which is antagonistic to the interests of the Employee Investors.

17.     Common questions of law and fact exist as to all of the Employee Investors and these predominate over any questions solely affecting individual members of the Employee Investors.  Among the questions of law and fact common to the Employee Investors:

      a.   Whether the Defendants, in orchestrating and executing the 2013 Restructuring, perpetuated a fraud upon the Employee Investors which caused damages to the Employee Investors;

      b.   Whether the Defendants, in orchestrating and executing the 2013 Restructuring, breached their respective fiduciary duties owed to the Employee Investors which caused damages to the Employee Investors; and

      c.  To what extent the Employee Investors sustained damages and what is the proper measure of damages.

18.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical.  Furthermore, because the damages suffered by individual Employee Investors may be differing in amount, the expense and burden of individual litigation makes it impossible for members of the Employee Investors to pursue individual redress for the damages caused to them by Defendants' acts. Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

**FACTUAL BACKGROUND**

19.    Prior to the creation of CEVA Logistics by Apollo Global in 2007, Plaintiff and other management-level employees of TNT, were given an opportunity to purchase restricted shares of stock in "Newco", an entity that would ultimately be recognized as CIL.  Specifically, Plaintiff purchased restricted shares in an entity that at the time was known as Louis Topco Limited, a Cayman Islands entity. Ultimately, Apollo Global changed the name of Louis Topco Limited to CEVA Investments Limited, which, as stated above, is now known as CIL.  Similarly, Apollo Global, at the time of its acquisitions of Eagle, provided to Eagle management-level employees a similar opportunity to purchase restricted shares of stock in CIL. All in all, those management-level employees who purchased restricted shares of CIL during the class period comprise the Employee Investors.

20.    Upon information and belief, Apollo Global made representations to the Employee Investors to induce them to invest their monies into CEVA Logistics including, but not necessarily limited to, the following:

a. "We are partners and we as sponsors commit ourselves personally and institutionally to the vision[;]"

b. "Apollo is focused on creating value for all stakeholders (employees, customers and owners) [...;]"

c. "The program is structured to reflect our philosophy that management and the Sponsors should be partners with aligned incentives to generate substantial equity value and share in gains[;]"[2]

d. "The combination of leverage provided to management through options as well as the equity returns on the deal will create significant investment returns. Apollo and management will create a "business case" that all parties will 'own' and will be the basis for driving shareholder value[;]"

e. "Bottom Line: Apollo and Management will be aligned to share in value creation[;]"

f. "Fair Market Value is generally determined by the Board of Directors of the Company in good faith, utilizing a number of factors[;]"

21.     Indeed, the Employee Investors purchased the restricted shares in CIL based on Apollo Global's representations to the Employee Investors that the Employee Investors would obviously participate in the management of CEVA Logistics and that CEVA Logistics was to be operated as a "partnership" based upon good faith, mutual trust, and confidence.

22.     In February of 2012, the Employee Investors received an Employee Investor Briefing announcing a refinancing that would allow benefits to Employee Investors. Specifically, among the benefits listed to Employee Investors was an increase in the capability to grow the

---

[2] Upon information and belief, 'Sponsors' refers to Apollo Global.

business, *a reduction in risk to equity value*, and quicker access to the initial public offering ("IPO") market.

23.     On May 4, 2012, CIL (at that time known as CEVA Investments) filed with the Securities and Exchange Commission ("SEC") a Form F-1 in anticipation of an IPO of CIL's Apollo Shareholders' 4,416,565 Class B Shares.[3] At that time, CIL was a closely held corporation, majority owned and controlled by Apollo Global, and the Employee Investors were its minority shareholders.   Indeed, upon information and belief, as of September 30, 2012, the Employee Investors held approximately 344,048 Class A Shares (the "Class A Shares"), which represented approximately 8.6% of CIL's ownership equity, and held a value of €17,202,400.  Moreover, on September 12, 2012, upon information and belief, at a meeting of CIL's Board of Directors (Beith and Turner), it was determined that the fair market value of the Class A Shares was €50 per share.

24.     However, upon information and belief, at some point between September and November of 2012, Parker, Turner and Beith, by and through their respective and conflicting positions with CIL, CEVA Group, and Apollo Global, began to plan the 2013 Restructuring. Indeed, upon information and belief, in October of 2012, CIL sought advice from the Walkers law firm ("Walkers") in the Cayman Islands regarding the fiduciary duties of its directors.   Upon information and belief, Walkers also served as counsel to CEVA Group regarding the 2013 Restructuring.

25.     Upon information and belief, Turner and Beith, both directors of CIL, also sought counsel from the law firm of Mintz Levin in New York City (who also represented Apollo Global) and the Appleby law firm in the Cayman Islands ("Appleby") on behalf of CIL with regards to the

---

[3] On August 29, 2012, CIL filed an Amended Form F-1 with the SEC, in anticipation of an IPO.

2013 Restructuring.  Upon information and belief, Appleby was formally retained by CIL in December of 2012.

26.     Upon information and belief, in February of 2013, counsel for CEVA Group advised Beith and Turner as to the details of the planned 2013 Restructuring wherein CIL and its directors would allow CEVA Group to issue new shares to CEVA Holdings,  essentially transferring all equity of CEVA Group held by CIL to CEVA Holdings for no consideration.

27.     CEVA Group, as a subsidiary of CIL (who owned 99.9% of CEVA Group shares), should not have been able to direct Beith and Turner, as directors of CIL, to allow CEVA Group to issue new shares to the absolute extinguishment of the Employee Investors' equity.

28.     Additionally, upon information and belief, Mintz Levin as, counsel to CIL, wrote, "[t]he problem is that CEVA has asked CIL to undertake certain actions, not the other way around. We are happy to do it, but neither CIL nor its directors wants to take the chance of incurring liability for having complied with [CEVA Group's] requests."

29.     Indeed, upon information and belief, Appleby, as counsel for CIL warned "[i]t is important to take all steps to avoid shareholder complaint that the whole process … is just a part of an Apollo Group stitch up, for its own purposes, pushed through at CIL level by Apollo controlled votes, in disregard of the interest of the CIL shareholders."  Upon information and belief, Appleby was referring to the Employee Investors, as Apollo Global had majority ownership and control of CIL.

30.     Upon information and belief, Apollo Global, acting in conjunction with Beith and Turner, continued with their plan for the 2013 Restructuring despite the acknowledged conflict issues.  Specifically, upon information and belief, counsel for CIL, Mintz Levin, expressed dissatisfaction with a then current draft of the 2013 Restructuring proposal as "it was an excellent

internal roadmap" but was "too forthcoming about our goals, our strategy, and some of our alternatives[,]" and that "this document could conceivable end up in front of a court some day and I want to give off an appearance the we are operating at an arms' [sic] length basis."

31.     Upon information and belief, in an effort to effectuate the 2013 Restructuring and give the appearance of an arm's-length transaction, Defendants began actively planning resignations of multiple directors of CEVA Group and CIL. Specifically, upon information and belief, on or about January 15, 2013, two directors of CIL, Rubin McDougal and Dawn Wetherall, resigned from CIL's board while maintaining senior level positions of executive leadership in other CEVA entities, thus leaving Beith and Turner as the only directors of CIL, with both Beith and Turner retaining senior positions at Apollo Global, CIL's majority shareholder. Likewise, Turner resigned as a director of CEVA Group on or about January 15, 2013, while likewise retaining his position at Apollo Global. Upon information and belief, Mintz Levin provided advice to and drafted the resignation letters for the directors, while at the same time purporting to advise CIL.

32.     Upon information and belief, aware of and concerned with the Turner's and Beith's conflicts, on or about February 22, 2013, Mintz Levin counseled Turner and Beith to create an illusion that would make it appear as if they were independently evaluating the 2013 Restructuring proposal. Specifically, an attorney at Mintz Levin determined that Turner and Beith could deem an ad hoc phone discussion to constitute a meeting of CIL's board and stated, "[n]o need for Mark [Beith] to call the meeting to order – we will just deem it so. We will keep minutes. They will reflect that we asked CEVA and professionals to make a presentation" and further advising CIL to "tell them that we will respond in a week, so as not to give the impression that we are just rubber stamping, even if we are in favor of their plan."

33.     Upon information and belief, Apollo Global and CEVA Group gave a presentation regarding the proposed 2013 Restructuring to certain of its creditors, proposing to extinguish the equity of the Employee Investors and Apollo Global, in a debt for equity swap.  Upon further information and belief, Apollo Global, by and through the Apollo Shareholders (defined above), also owned a significant amount of CEVA debt and was to participate in the then proposed 2013 Restructuring and to benefit greatly from the 2013 Restructuring.  No information regarding the then-proposed 2013 Restructuring was provided to the Employee Investors.

34.     Further, upon information and belief, on February 21, 2013, counsel for CEVA Group advised Mintz Levin, who was acting as counsel for CIL, to file a provisional liquidation of CIL in the Cayman Islands.

35.     Upon information and belief, on March 18, 2013, Mintz Levin sent an email to Beith and Turner stating, "[w]ith all the meddling by CEVA and Akin, we are getting to the point where we cannot even suggest there is any separateness between CIL and CEVA [Group], even if there was any to begin with."

36.      Upon information and belief, on March 28, 2013, Apollo Global caused CEVA Holdings to be created as a new entity in the Marshall Islands.

37.     Upon information and belief, on April 1, 2013, CEVA Group, Louis Cayman (the holder of .01% of CIL shares), CEVA Holdings, and CIL entered into an agreement (purportedly in settlement of CIL claims against CEVA Group) by which CIL agreed to allow CEVA Holdings to obtain all the equity of CEVA Global in exchange for no consideration.

38.     Likewise, upon information and belief, on April 1, 2013, Beith and Turner at the request of Apollo Global, caused "CEVA Investments Limited" to have its name changed to "CIL Limited."

39.     Upon information and belief, on April 2, 2013, Beith and Turner caused CIL to file for a provisional liquidation in the Cayman Islands, filing under an anonymous name of ABC Limited to further ensure secrecy.

40.     Additionally, upon information and belief, on April 2, 2013, Defendants caused CIL to withdraw its IPO with the SEC.

41.     Upon information and belief, on April 3, 2013, CEVA Group, Apollo Global, and certain of CEVA Group's debt holders entered into a Restructuring Support Agreement to effectuate the 2013 Restructuring.

42.     Upon information and belief, Defendants greatly benefitted from the 2013 Restructuring to the detriment of the Employee Investors.

43.     Upon information and belief, on or about April 4, 2013, CEVA Group issued a report to its bondholders (the "Bondholder Report") that detailed and stated the following:

a.   Beith and Turner as directors of CIL held interests in entities that were creditors of CEVA, and as such were able to participate and benefit from the planned 2013 Restructuring;

b.   After extensive arm's-length negotiations, a settlement was reached of CIL's intercompany claims against CEVA Group, which entailed, among other things, "CEVA [Group], CIL, Ceva Holdings, LLC, and Louis Cayman Second Holdco Limited enter[ing] into a Restructuring Agreement pursuant to which […] CIL agree[ing] to allow [CEVA Group] to issue new shares[;]" and

c.   "CEVA [Group] and CIL believe that this compromise and settlement of the CIL Intercompany Claim, as part of the overall compromise and settlement between CEVA [Group] and CIL regarding the issuance of shares by CEVA

[Group] to facilitate the Restructuring, fairly and appropriately resolves the potential risks of litigation regarding the CIL Intercompany Claim, is a good faith compromise, and is reached after arms' length negotiations. The settlement and compromise was approved by each of the Boards of Directors of CEVA [Group] and CIL, which were both independently advised by separate legal and financial advisors. The Boards of Directors of CEVA [Group] and CIL consist of no members that are members of the other Boards of Directors."

44.    However, the purported settlement and compromise of CIL allowing CEVA group to issue new shares to CEVA Holdings was not in good faith, was not an arm's-length negotiation, and was heavily conflicted.  Indeed, the "CIL Intercompany Claim" was a mere contrivance of and by the Defendants which settlement of was, as well, a subterfuge designed to lend an aura of legitimacy to their acts.

45.    On or about April 5, 2013, the Employee Investors were sent correspondence from CIL, alternatively defined in the April 5, 2013 correspondence as "Holdco", from its offices in the Cayman Islands. The correspondence stated in relevant part:

> As you likely know, the principal investment of Holdco is its direct and indirect shareholding in its subsidiary company, CEVA Group Plc ("CEVA").  The directors of Holdco have received advice from valuation and restructuring professionals that Holdco's shareholding in CEVA is now without value, in consequence of the financial condition of CEVA.
>
> You may have seen, or shortly will see, press announcements concerning the proposed restructuring of CEVA […].
>
> In light of Holdco's and CEVA's financial condition, we have been advised that it is unlikely that there will be any recoveries for shareholders of Holdco in their capacities as shareholders.  The Directors regret having to write to you with this information.

46.     However, the representation in the April 5, 2013 correspondence to the Employee Investors was false.  Upon information and belief, Parker, Stanley, and Beith engaged Morgan Stanley and Ernst & Young, on behalf of Apollo Global, to perform valuation work in anticipation of executing the 2013 Restructuring.

47.     Upon information and belief, in early January of 2013, Beith spoke with representatives of Ernst & Young about providing an opinion concerning restructuring options and the valuation of CEVA Group's shares, of which CIL was the majority owner.  In a January 16, 2013 proposal, Ernst & Young proposed to perform valuation work that would include discussions with management and an analysis of CEVA Group's earning capacity.

48.     Upon information and belief, Beith and Turner responded to Ernst & Young that its role was to be limited to providing a second opinion of a restructuring plan and that Ernst & Young was only to review materials provided to it.  Indeed, Beith stated that a valuation by Ernst & Young was not wanted and instructed Ernst & Young to accept a valuation provided by Apollo Global's professionals, one of which was Morgan Stanley.

49.     Upon information and belief, the CIL directors engaged Ernst & Young to prepare a report (the "Ernst Young Report") to be based only in part upon information contained in a report to be prepared by Morgan Stanley.  Indeed, upon information and belief, Mintz Levin communicated to the CIL directors that, "I trust that you have made it clear that [the role of the Ernst & Young Report] re the restructuring plan is just to review and not to create and, especially, that they will not be able to, or expected to verify basic data [....]" and that "they will take the data as given."  Upon information and belief, both CIL directors conversed and concurred that the Ernst & Young report should be satisfactory to them and that the report needed to meet the needs of their purpose.

50.      Upon information and belief, on or about January 17, 2013, two days after the resignations of the various directors referenced above, Parker requested Morgan Stanley to conduct an evaluation of CEVA Group. On January 28, 2013, only a week after Beith provided Morgan Stanley with financial data and eleven-days after the request by Parker, Morgan Stanley produced a valuation report of CEVA Group (the "Morgan Stanley Report"). The Morgan Stanley Report was based upon information provided by Apollo Global that was not independently verified and not suitable for use in evaluating the 2013 Restructuring due to lack of verification of the information. Specifically, the Morgan Stanley Report stated:

> You should not definitively rely upon it or use it to form the definitive basis for any decision, contract, commitment or action whatsoever, with respect to any proposed transaction or otherwise.

51.      Nonetheless, the Morgan Stanley Report indicated that CEVA's equity might have significant value.  Indeed, upon information and belief, the Morgan Stanley Report showed that CEVA Group's value could be as high as $3.75 billion, an amount high enough to satisfy debt obligations and provide value to CIL.

52.      Despite the fact that in September of 2012, CIL's directors had determined that CIL shares had value and, that the outside valuations conducted at the behest of Apollo Global in February of 2013 were flawed and inconclusive, on April 5, 2013, Apollo Global sent notice to Employee Investors that their shares in CIL had been extinguished as they had no value.  Indeed, Apollo Global falsely claimed that the Employee Investors shares were worthless because of the financial condition of CIL thus necessitating the 2013 Restructuring.  The truth was that CIL had significant value that was only destroyed as a result of the 2013 Restructuring.

53.      Upon information and belief, within a few months after 2013 Restructuring, Apollo Global fraudulently induced some then-current CEVA Logistics employees who are Employee

Investors to waive claims against Apollo Global and CEVA Group in exchange for shares (of lesser value than Employee Investors investments in CIL) by providing them with false financial information, omitting relevant information regarding alternative options to the 2013 Restructuring, and stating falsely that CIL's equity in CEVA had no value. Upon information and belief, Apollo Global intended that the Employee Investors rely upon these falsities.

54.     Upon information and belief, Apollo Global is the controlling shareholder and manager of CEVA Holdings and has derived great financial benefit for itself and Turner and Beith. Upon information and belief, CEVA Holdings is a mere continuation of CIL and therefore CIL suffered no damage as an entity pursuant to the 2013 Restructuring.

55.     In 2013 both CIL and CEVA Group were under control of Apollo. Apollo Global was the controlling shareholder of CIL, and CIL, in turn owned CEVA Group. As such, CIL's valued derived solely from its ownership of CEVA Group. As such, the Employee Investors' value in CIL likewise derived from CIL's ownership of CEVA Group. Indeed, upon information and belief, the CEVA Group Bondholder Report dated April 4, 2013, referenced above, states in relevant part:

> Through control of a majority of the ordinary shares of CIL, Apollo and its affiliates have the power to control us and our affairs and policies, including the election of our directors and the appointment of our management team. A majority of the members of our board are partners or employees of Apollo.

### COUNT I – FRAUD
### (Against all Defendants)

56.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation of paragraphs 1 through 55 as if fully set forth herein.

57.     Employee Investors, by and through Apollo Global, were induced to invest significant monies in CIL.

58.   Apollo Global represented to Employee Investors that its interests would be aligned with the Employee Investors.

59.   Apollo Global represented to Employee Investors that the restricted share value in CIL would be determined on a good faith basis.

60.   Indeed, Defendants, in September of 2012, determined that the value of CIL's Class A shares held a value of €50 per share.

61.   Defendants, beginning in October of 2012, knowingly and willingly, began to plan an unlawful scheme that would damage the Employee Investors by extinguishing the value of their restricted shares in CIL, while retaining equity value in and majority control in CEVA Holdings for themselves.

62.   Defendants, knowingly and willingly, procured and guided the Morgan Stanley Report and the Ernst Young Report (collectively, the "Financial Reports"), which they knew were based on deliberately manipulated and incomplete financial information, without properly evaluating alternatives.

63.   Defendants knowingly and willingly used the Financial Reports as a basis for the 2013 Restructuring, determining that CIL shares in CEVA Global equity had no value.  Defendants made such determinations in bad faith.

64.   Defendants knowingly and willingly transferred all equity in CEVA Group to CEVA Holdings for no consideration, and gave improper value and consideration to the Employee Investors.

65.   Defendants knowingly and willingly provided the Employee Investors with false information regarding the value of their restricted shares in CIL, and the Employee Investors reasonably relied upon this information.

66.     Defendants, knowingly and willingly made material misleading statements and omissions when they failed to withdraw the publicly filed SEC Form F-1 at a time when they knew they had no intention of moving forward with an IPO.

67.     Defendants, knowingly and willingly made material misleading statements and omissions when they failed to inform Employee Investors of alternatives to the 2013 Restructuring, such as raising funds through an IPO, or options of selling CEVA Group in a private sale.

68.     Defendants, knowingly and willingly induced some Employee Investors to waive claims against Defendants by providing them with false information and improper value and consideration.

69.     Defendants intended that the Employee Investors rely upon these misleading statements and omissions.

70.     As a result of Defendants unlawful behavior, the Employee Investors have been damaged.

### COUNT II – BREACH OF FIDUCIARY DUTY
**(Against all Defendants)**

71.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation of paragraphs 1 through 55 as if fully set forth herein.

72.     Apollo Global, by virtue of its role as the Sponsor of the employee-stock equity plans that resulted in the purchase of minority restricted shares in CIL by the Employee Investors and, and by virtue of its status as the majority shareholder of CIL, owed the Employee Investors a special duty of care.

73.     Likewise, Turner and Beith, by virtue of their respective roles as directors of CIL and employees of Apollo Global, owed a special duty of care to the minority Employee Investor shareholders.

74.     Indeed, in as much as CIL was a closely held corporation and Apollo Global was the majority shareholder, Apollo Global exercised complete dominion and control over CIL by and through its employees, Turner and Beith, CIL's directors.

75.     As has been stated throughout, the Defendants breached their respective duties of care to Employee Investors.

76.     Apollo Global represented to the Employee Investors that its interests would be aligned with the Employee Investors.

77.     Apollo Global represented to Employee Investors that share value in CIL would be determined on a good faith basis.

78.     Apollo Global, by and through Turner and Beith, beginning in October of 2012, knowingly and willingly, began to plan an unlawful scheme that would damage the Employee Investors by extinguishing the value of the Employee Investors' restricted shares in CIL, while retaining equity value in CEVA Holdings for themselves.

79.     Defendants, knowingly and willingly, procured and guided the Morgan Stanley Report and the Ernst Young Report (collectively, the "Financial Reports"), which they knew were based off dishonest and incomplete financial information, without properly evaluating alternatives.

80.     Defendants knowingly and willingly used the Financial Reports as a basis for the 2013 Restructuring, determining that CIL shares in CEVA Global equity had no value.  Defendants made such determinations in bad faith.

81.     Defendants knowingly and willingly transferred all equity in CEVA Group held by the Employee Investors to CEVA Holdings, and gave improper value and consideration to the Employee Investors for this transaction.

82.     Defendants knowingly and willingly provided the Employee Investors with false information regarding the value of their restricted shares in CIL, and the Employee Investors reasonably relied upon this information.

83.     Defendants, knowingly and willingly induced some Employee Investors to waive claims against Defendants by providing them with false information, making material omissions, and improper value and consideration.

84.     In so doing, Defendants abused their positions for their own financial benefit and used special inside knowledge obtained by virtue of their respective positions, which they failed to share with the Employee Investors, to take advantage of the minority shareholders who constitute the Employee Investors.  Indeed, the result of the 2013 Restructuring orchestrated and implemented by the Defendants was that the Defendants gained economic benefits while the Employee Investors were frozen out of any such benefit and, as such, the Employee Investors were uniquely harmed.

85.     As a result of Defendants' breaches of fiduciary duties, the Employee Investors have been harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Michael McEvoy, on behalf of himself and all others similarly situated, prays for relief pursuant to each Count set forth in the Complaint as follows:

1.   For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating his counsel as counsel for the class;

2.   For compensatory and punitive damages to be determined at trial;

3.   For an award of costs; and

4.   For any other relief the court might deem just, appropriate, or proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.


Respectfully submitted this 3rd day of August 2017.

JOHN D. WEBB, P.A.

John D. "Jack" Webb
Florida Bar Number 0051871
6320 St. Augustine Road, Suite 7B
Jacksonville, Florida 32217
Telephone: (904) 803-4686
Primary Email:
jwebb@jackwebblaw.com
Secondary Email:
arichey@jackwebblaw.com
