# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MICHAEL MCEVOY, on behalf of
himself and others similarly
situated

    Plaintiff,

v.

Case No. 3:17-cv-891-J-32MCR

APOLLO GLOBAL
MANAGEMENT, LLC, a Delaware
limited liability company, APOLLO
MANAGEMENT VI, L.P., a
Delaware limited partnership, and
CEVA GROUP, PLC,

    Defendants.

---

# **O R D E R**

This putative securities class action is before the Court on Apollo Defendants' Motion to Dismiss, Doc. 54, and CEVA Group Plc's Motion to Dismiss the Class Action Complaint, Doc. 55. The Court has reviewed the responses, Docs. 65, 66; replies, Docs. 70, 71; and the sur-reply, Doc. 76. On December 3, 2019, the Court held a hearing on the motions to dismiss, the record of which is incorporated herein. Doc. 79.

## I. BACKGROUND[1]

Plaintiff Michael McEvoy, a resident of Duval County, Florida, is a former management employee of CEVA Logistics, a freight management and supply chain logistics company. Doc. 35 ¶¶ 4, 5. CEVA Logistics was created between 2006-2007, when investment funds managed or advised by Defendants Apollo Global Management, LLC ("Apollo Global") and Apollo Management VI, L.P. ("Apollo VI") (collectively, "Apollo") acquired two logistics providers TNT Logistics and EGL, Inc. ("Eagle"), and combined them to form CEVA Logistics.[2] Id. ¶¶ 7, 22. Defendant CEVA Group Plc ("CEVA Group") is an England and Wales public limited liability company headquartered in the United Kingdom, and is the holding company for CEVA Logistics.[3] Id. ¶ 5. Until April 2013, CEVA Investments Limited ("CIL"), a Cayman Islands holding company, owned 99.9% of the shares of CEVA Group. Id. At that time, CIL was owned and controlled by four funds under the control of Apollo Global.[4] In re CIL Ltd., 582

---

[1] The Background facts are largely drawn from the allegations of the Amended Class Action Complaint ("ACAC"), Doc. 35, and must, for purposes of the motions to dismiss, be assumed to be true.

[2] Before the merger that formed CEVA, McEvoy was previously employed by TNT at its Jacksonville, Florida headquarters. Doc. 35 ¶ 4.

[3] As in the ACAC and Apollo's motion to dismiss, "CEVA" and "CEVA Logistics" refer collectively to CEVA Group, Plc and its subsidiaries. See Doc. 35 ¶ 5; Doc. 54 at 9 n.1. The Court refers to Defendants Apollo Global, Apollo VI, and CEVA Group Plc collectively as "Defendants."

[4] One of the funds was Apollo VI.

2

B.R. 46, 62 (Bankr. S.D.N.Y. 2018), amended on reconsideration, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018). Apollo Global is a Delaware limited liability company headquartered in New York, Doc. 35 ¶ 8, and Apollo VI is a Delaware limited partnership headquartered in New York, id. ¶ 10.

In 2006-2007, to facilitate the merger and align the interests of Apollo and management, management employees of TNT and Eagle ("Management Co-Investors"), including McEvoy, were required to purchase equity in the company that later became CIL. Id. ¶¶ 30-40. This way, "as in any private equity transaction," the Management Co-Investors would have some "skin in the game." Id. ¶ 30. Overall, the Management Co-Investors contributed over €30 million in direct co-investments. Id. ¶ 40.

These investments were structured via a special purpose vehicle called the 2006 CIL Long-Term Incentive Plan ("LTIP"), through which the Management Co-Investors purchased restricted shares. Id. ¶ 41; Doc. 35-4. Section 10.1 of the LTIP provides that in the event of a change in the capital structure of CIL, including a recapitalization, the Committee of the Board of CIL "shall make such substitutions or adjustments as it deems appropriate and equitable . . . ." Id. ¶ 45. Section 10.2(b) states that "[a]ny adjustments referred to in Section 10.1 shall be made by the Committee or the Board in its discretion

3

and shall, absent manifest error, be conclusive and binding on all Persons holding Any Awards granted under the Plan." Id.

Apollo engaged in a series of complex debt acquisitions around 2008, and as a result, McEvoy alleges that the interests of Apollo and the Management Co-Investors were no longer aligned. Doc. 35 ¶¶ 52, 55 n.11. In 2012, CEVA faced liquidity challenges due to adverse changes in the freight management industry. Doc. 54 at 13; Doc. 54-1 at 16.[5] Apollo-affiliate funds agreed to convert over €850 million in debt holdings to approximately €880 million in CIL equity in the form of Class B preferred shares. Doc. 54-1 at 18; Doc. 35 ¶¶ 56-57. The Class B preferred shares were senior to the Class A shares held by Apollo funds and by the Management Co-Investors, and were entitled to a liquidation preference. Doc. 54 at 13.

By late 2012, CEVA continued to face significant financial concerns. The Bondholder Report documents these challenges, from a double-digit drop in EBITDA[6] in early 2013, to defaults on interest payments. On April 3, 2013, CEVA, Franklin Advisers, Inc., Franklin Templeton Investment Corp., Capital Research and Management Company, and Apollo-affiliated funds that held debt

---

[5] Doc. 54-1 at 5-203 is the CEVA Group Plc Report to Bondholders ("Bondholder Report"), dated April 4, 2013. The ACAC references the Bondholder Report extensively, and Apollo attached it to its motion to dismiss.

[6] EBITDA stands for earnings before interest, taxes, depreciation, and amortization.

4

issued by CEVA or its subsidiaries entered into the Restructuring Support Agreement ("2013 Restructuring"). Doc. 54-1 at 70. The Bondholder Report describes the 2013 Restructuring, which eliminated more than €1.2 billion of CEVA's debt, reduced its annual cash interest expense by over €135 million, and provided a capital infusion of at least €205 million. Doc. 54-1 at 69. CEVA's creditors agreed to exchange their CEVA debt for equity in the newly-formed Apollo affiliate, CEVA Holdings LLC, which would become the primary equity owner of CEVA. Doc. 35 ¶¶ 83-84. McEvoy alleges that the equity of CEVA Group held by CIL was transferred to CEVA Holdings for no consideration. Id. ¶ 72. McEvoy alleges that the transaction, referred to as the "recapitalization," diluted CIL's ownership of CEVA Group from 100% to 0.01%. Id. ¶ 84; In re CIL Ltd., No. 13-11272-JLG, 2018 WL 878888, at *2 (Bankr. S.D.N.Y. Feb. 9, 2018).

McEvoy alleges that the 2013 Restructuring was rife with conflicts of interest, with "members of the Board of CIL and Board of CEVA Group, along with Apollo as the manager of the Apollo Shareholders as majority controlling shareholders, [standing] on both sides of the 2013 Transaction." Id. ¶¶ 75-83, 92. The ACAC quotes CIL's counsel, Mintz Levin, as stating that he wanted "to give off an appearance the we are operating at an arms' [sic] length basis." Id. ¶ 75. McEvoy alleges that Defendants began planning the resignations of multiple directors of CEVA Group and CIL to give the appearance of an arm's length transaction. Id. ¶ 76. The ACAC contains allegations of Mintz Levin

5

stating that "we need to consider the ramifications if any, of a vote by Apollo without any notice or meeting in a process that will ultimately benefit Apollo at the CEVA level while wiping out the equity interest of all other shareholders at the CIL level." Id. ¶ 80. Further, McEvoy alleges that Apollo VI effectuated the vote on behalf of the Management Co-Investors "without notice or safeguards as to their conflicted status." Id. ¶ 81.

On April 2, 2013, CIL filed for a provisional liquidation in the Cayman Islands. Id. ¶ 87. On April 5, 2013, CIL sent the Management Co-Investors, including McEvoy, a letter stating that their investment in CEVA Group is "now without value, in consequence of the financial condition of CEVA." Id. ¶ 94; Doc. 54-1 at 208-09. The letter further advised the recipients of CIL's liquidation and that "it is unlikely that there will be any recoveries for shareholders of [CIL] in their capacities as shareholders." Id. Essentially, the Management Co-Investors' investment was wiped out.

However, McEvoy alleges that under the LTIP, the Management Co-Investors were owed an equitable adjustment in the event of "Corporate Transactions" of CIL or its subsidiaries, including CEVA Group. Id. ¶ 95. In June 2013, some Management Co-Investors "were being awarded a cash award equal to 60% of their net cumulative investments in CIL." Id. ¶ 97. However, the cash award was "independent of the new long-term incentive plan," id. ¶ 99, and McEvoy and numerous other Management Co-Investors "did not receive

6

the required adjustment pursuant to the LTIP, nor notice of the adjustment," id. ¶ 103.

On April 2, 2013, CIL filed a petition beginning insolvency proceedings in the Cayman Islands. In re CIL Ltd., 582 B.R. at 66. On April 22, 2013, three noteholders filed an uncontested involuntary chapter 7 petition against CIL in the United States Bankruptcy Court for the Southern District of New York. Id. On May 13, 2013, the bankruptcy court granted the involuntary chapter 7 petition. Id. On December 8, 2014, the chapter 7 Trustee began an adversary proceeding in the bankruptcy court against CIL directors Gareth Turner and Mark Beith, CEVA Group, CEVA Holdings, and a related company, CEVA Logistics Finance B.V. Id. That case is still pending. Id.

## II. PROCEDURAL HISTORY

On August 3, 2017, McEvoy filed this putative class action lawsuit against Beith, Turner, and Apollo Global. Doc. 1. CEVA Group and Apollo VI were not named in that complaint. However, on October 18, 2017, the chapter 7 trustee for CIL filed a motion in the New York bankruptcy court to enjoin this case, arguing that it violated the automatic stay imposed by 11 U.S.C. § 362(a). Specifically, the trustee argued that the claims McEvoy asserted were duplicative of those the trustee had filed and were therefore derivative claims that were property of CIL's estate. The bankruptcy court agreed. In re CIL Ltd., 2018 WL 878888, at *12. Thus, on February 9, 2018, the bankruptcy court held

7

that McEvoy's putative class action in this Court was "null and void *ab initio*." Id.

Although McEvoy's attempt to appeal the order failed, the District Court for the Southern District of New York permitted McEvoy to ask whether he could amend his complaint to assert direct claims rather than derivative claims. In re CIL Ltd., Case No. 18-cv-2226 (JSR), Doc. 7 (S.D.N.Y.). McEvoy proposed an amended complaint, and on October 16, 2018, the bankruptcy court allowed McEvoy to file the amended complaint in this Court.[7] Doc. 31-2. On December 7, 2018, McEvoy filed the ACAC, asserting numerous claims against Apollo and CEVA Group, including: (1) violation of the Investment Advisors Act of 1940 against Apollo VI (Count I); (2) breach of fiduciary duty against Apollo (Count II); (3) breach of fiduciary duty against Apollo VI (Count III); (4) breach of fiduciary duty against CEVA Group (Count IV); (5) breach of contract (in the alternative) against CEVA Group (Count V); and (6) declaratory judgment regarding partnership/joint venture (Count VI).[8] Doc. 35.

---

[7] McEvoy's proposed amended complaint removed the CIL directors as defendants, added CEVA Group and Apollo VI as defendants, and changed the nature of the claims alleged.

[8] The bankruptcy court and this Court directed McEvoy to file the proposed amended complaint that he filed with the bankruptcy court. However, the ACAC McEvoy filed contains numerous changes, with no motion to amend having been filed. Doc. 54-1 at 210-44 (redline of the proposed amended complaint compared with the ACAC). Regardless, the Court will consider the ACAC, Doc. 35, the operative pleading.

8

## III. MOTIONS TO DISMISS

Apollo and CEVA filed separate motions to dismiss, Docs. 54 and 55, arguing that the ACAC is due to be dismissed on numerous grounds. However, the Court has limited its discussion here to the Investment Advisers Act and statute of limitations issues.

### A. No private right of action for damages exists under the Investment Advisers Act of 1940

McEvoy alleges that Apollo VI, as investment adviser to the LTIP, violated § 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 et seq., ("IAA") by failing to provide certain information and recommendations, and by not properly representing the interests of the Management Co-Investors in the restructuring. Doc. 35 ¶¶ 108-18. Apollo responds that according to Supreme Court precedent, the IAA does not provide a private damages remedy. Doc. 54 at 18-20.

Congress enacted the IAA to address the abuses it found to exist in the investment advisers industry. See Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 12 (1979). Section 206 provides:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;

> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; or
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

15 U.S.C. § 80b-6. Section 215 provides that contracts whose formation or performance would violate the IAA are void. See id. § 80b-15; Transamerica, 444 U.S. at 16-17. In Transamerica Mortgage Advisors, Inc. v. Lewis, the Supreme Court considered whether §§ 206 and 215 of the IAA conferred a private right of action. The Supreme Court held that there exists an implied, limited private remedy under the IAA to void an investment advisers contract, but that the IAA confers no other private causes of action, legal or equitable. Transamerica, 444 U.S. at 24.

Despite this Supreme Court precedent, McEvoy describes certain post-Transamerica congressional activity, Doc. 65 at 2-7, including the Securities Law Enforcement Remedies Act of 1990, Pub. L. No. 101-429 amendments to the IAA, which he argues necessarily means that "an express private [right] of action for damages exists under the Act." Doc. 65 at 7. However, he cites no authority overturning Transamerica, nor any case holding that a private right of action for damages exists under § 206.[9] To the contrary, numerous courts have noted that under Transamerica, no private right of action exists, see e.g., Local Div. 732, Amalgamated Transit Union v. Metro. Atlanta Rapid Transit Auth., 667 F.2d 1327, 1334 (11th Cir. 1982), and other federal courts have addressed McEvoy's argument and rejected it, see In re Mut. Funds Inv. Litig., 384 F. Supp. 2d 873 (D. Md. 2005); Filson v. Langman, No. CIV.A. 99-30021FHF, 2002 WL 31528616 (D. Mass. Nov. 13, 2002). Given the prodigious weight of authority, the Court finds that no private right of action exists under § 206. Therefore, Count I is due to be dismissed.

Apollo pre-emptively argues that McEvoy has not stated a claim for rescission under § 215 of the IAA, and even if he had, such claim would be time-barred. Doc. 54 at 18-20; Doc. 70 at 9-11. Despite McEvoy's arguments to the

---

[9] At oral argument, McEvoy conceded that no court has so held.

contrary,[10] the Court agrees. The ACAC does not invoke § 215 or plead facts that would support such a claim.

## B. Statute of Limitations

The remaining counts of the ACAC are state law claims under Delaware law. While Defendants have presented a strong case that the statute of limitations bars this action under Delaware law, McEvoy has raised equitable and other grounds in opposition, and the Court is reluctant to rule on this potentially dispositive issue in the context of a motion to dismiss. Thus, the Court will convert the motions to dismiss on the statute of limitations issue into motions for summary judgment, give the parties an opportunity to develop the record as necessary (including limited discovery on the statute of limitations issue), and then engage in summary judgment practice.[11]

Accordingly, it is hereby

**ORDERED:**

---

[10] In a footnote, McEvoy argues that the Court should essentially read a § 215 claim into his prayer for relief. Doc. 65 at 7 n.3. The Court declines to do so. See Ryals v. Rambosk, No. 2:07-CV-56-FTM-29SPC, 2010 WL 3069355, at *3 (M.D. Fla. Aug. 2, 2010), as amended (Aug. 9, 2010) (finding that a general prayer for relief was "not a proper freestanding count" and did "not purport to state a claim").

[11] Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

1. Apollo Defendants' Motion to Dismiss, Doc. 54, is **GRANTED in part**. Count I (Violation of the Investment Advisors Act of 1940 against Apollo Management VI, L.P.) of the ACAC (Doc. 35 ¶¶ 108-18) is **DISMISSED with prejudice**. The remainder of Apollo Defendants' Motion to Dismiss is **DENIED without prejudice**.

2. CEVA Group Plc's Motion to Dismiss the Class Action Complaint, Doc. 55, is **DENIED without prejudice**.[12]

3. Pursuant to Rule 12(d), the Court converts the motions to dismiss as to the statute of limitations issue to motions for summary judgment. No later than **March 16, 2020**, Defendants shall file fully-documented motions for summary judgment on the statute of limitations issue only.

4. No later than **April 16, 2020**, Plaintiff will file a fully-documented response to the motions for summary judgment.

5. No further activity will occur until the Court rules on the motions for summary judgment.

6. The Clerk should lift the stay and return the case to active status.

**DONE AND ORDERED** in Jacksonville, Florida the 6th day of January, 2020.

---

[12] If the Court denies the motions for summary judgment on statute of limitations grounds, it will permit Defendants to renew their motions to dismiss on the grounds not addressed in this Order.

TIMOTHY J. CORRIGAN
United States District Judge

sej
Copies:

Counsel of record