**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL MCEVOY, on behalf of
himself and others similarly
situated,

    Plaintiff,

v.                                                   Case No. 3:17-cv-891-TJC-MCR

APOLLO GLOBAL
MANAGEMENT, LLC, a Delaware
limited liability company, APOLLO
MANAGEMENT VI, L.P., a
Delaware limited partnership, and
CEVA GROUP, PLC,

    Defendants.

## **O R D E R**

This putative class action is before the Court on Defendants Apollo Global Management, Inc. (f/k/a Apollo Global Management, LLC), Apollo Management VI, L.P. (collectively, "Apollo"), and CEVA Group PLC's ("CEVA Group") Motion for Summary Judgment. Doc. 95. Plaintiff Michael McEvoy filed a response. Docs. 112, 116. The Court previously converted Defendants' motions to dismiss to a motion for summary judgment and ordered limited discovery on the issue of the statute of limitations only. Doc 80.

## I. BACKGROUND

### A. The Formation of CEVA Logistics and CEVA Investments Limited

Plaintiff Michael McEvoy began working Ryder Truck Lines in 1972. Doc. 96-1 at 17:15–18:9. He soon transitioned to a company called Customized Transportation, which was acquired by CSX, which in turn was sold to TNT Logistics, which Apollo purchased and merged with EGL, Inc. to form CEVA Logistics in 2006. Id. at 18:7–19:4. CEVA Logistics is a subsidiary of CEVA Group, a global freight management and supply chain logistics company. 97 at 1–2. CEVA Group itself was 99.9 percent owned by CEVA Investments Limited ("CIL"), a Cayman Islands corporation, until 2013. Doc. 97 at 2. Apollo "held the vast majority of CIL's preferred and common shares." Id. at 3.

Upon CEVA Logistics' formation, management-level employees from TNT and EGL, including McEvoy ("Management Investors"), were asked to purchase equity in the Cayman Islands company that became CIL. Doc. 96-1 at 30:18–20. They did so through a fund called the 2006 Long-Term Incentive Plan ("2006 LTIP"). Id. at 23:2–6. The investment was to "increase [directors and employees'] personal interest in [CIL's] growth and success . . . ." Doc. 96-2 at 3. McEvoy invested approximately €10,000 in the 2006 LTIP. Doc. 96-1 at 23:6. He received and reviewed the 2006 LTIP Agreement when he invested. Id. at 28:22–29:6.

### B. CIL's 2013 Restructuring

According to Marvin Schlanger, the Chief Executive Officer of CEVA Group from 2012 to 2014, due to financial problems in "mid-2012 into 2013," "CEVA Group's management determined that CEVA's only choice for survival was a financial restructuring." Doc. 97 at 2. In April 2013, CEVA Group performed a "major debt-for-equity exchange" ("2013 Transaction"). Id. CEVA Group converted much of CIL's debt into equity ownership of a new entity called CEVA Holdings, LLC ("CEVA Holdings"), diluting CIL's ownership of CEVA Group. Id. The transaction led to the de-valuation of CIL's ownership of CEVA Group from 99.9 percent to .01 percent, effectively wiping out all previous investment in CIL, including the 2006 LTIP shares' value. Id. On April 2, 2013, CIL entered provisional liquidation proceedings in the Cayman Islands. Doc. 98 at 1. According to Schlanger's declaration, "[n]o CIL shareholder, including [Apollo]. . . recovered anything on account of their investment in CIL in the 2013 Restructuring or thereafter," and a "collateral but inevitable consequence of the 2013 Transaction was the dissolution" of the 2006 LTIP. Doc. 97 at 2–3.

Three holders of CIL's unsecured debt filed an uncontested involuntary Chapter 7 petition against CIL in the United States Bankruptcy Court for the Southern District of New York on April 22, 2013, which the Bankruptcy Court granted, appointing a Chapter 7 Trustee ("Trustee"). In re CIL Ltd., 582 B.R. 46 (Bankr. S.D.N.Y. 2018), amended on reconsideration, No. 13-11272-JLG,

2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ("Bankruptcy Proceeding"). On December 8, 2014, the Trustee filed a complaint in the Bankruptcy Proceeding against CIL directors Gareth Turner and Mark Beith, CEVA Group, and CEVA Holdings, alleging that Apollo orchestrated a fraudulent transfer of CIL's interest in CEVA Group to CEVA Holdings without consideration. Doc. 96-12. The complaint alleged that "Apollo engineered, directed and caused a secretive transaction that divested CIL of CEVA Group, its primary asset, for no consideration, while leaving behind CIL's liabilities and rendering CIL insolvent." Id. at 4. Creditors have also filed direct claims against CEVA Logistics AG in New York Supreme Court in 2019, an action that, as of this Court's last update, has been stayed. Doc. 121 at 1, 2.

### C. CIL's Communications to McEvoy

In December 2012, CEVA Logistics informed McEvoy that due to general cutbacks, he would be laid off in March 2013. Doc. 96-1 at 24:14–18. He exercised his put rights to sell his 2006 LTIP shares at their present value on January 21, 2013, and was informed the following day that they could be purchased back on April 1, 2013, and that their most recent value was approximately €50 per share. Doc. 112-35 at 5–6. His last day at CEVA was March 31, 2013. Id. at 7. CEVA Logistics temporarily re-hired him as an independent contractor from October through December 2013 to help start a new logistics contract. Doc. 96-1 at 136:20–37:16; 137:23–25.

CIL informed McEvoy of the 2006 LTIP dissolution and CIL's lack of value via registered letter dated April 5, 2013, stating that "[t]he directors of [CIL] have received advice from valuation and restructuring professionals that [CIL's] shareholding in CEVA is now without value, in consequence of the financial condition of CEVA. You may have seen, or shortly will see, press announcements concerning the proposed restructuring of CEVA." Doc. 96-3 at 2. The letter further stated that "[i]n light of [CIL's] and CEVA's financial condition, we have been advised that it is unlikely that there will be any recoveries for shareholders of [CIL] in their capacities as shareholders." Id. at 3.

CIL sent another letter announcing the appointment of Joint Provisional Liquidators ("JPLs") as part of the Cayman Islands liquidation proceedings on April 8, 2013. Doc. 98-1. On April 17, 2013, the JPLs sent a letter to twenty to thirty Management Investors who had contacted the JPLs with questions. Doc. 112-29 at 125. The document has a question and answer section on CIL's condition and the 2006 LTIP, confirming to Management Investors that the company had no value, and that "no alternative investment is being offered to the [s]hareholders, nor is there any exchange offer being offered to the [s]hareholders." Doc. 98-2 at 4. The letter explained that the liquidation was performed "pursuant to the irrevocable proxy and power of attorney granted to Apollo Management VI, L.P." in the 2006 LTIP Agreement. Id. at 3. Schlanger instructed the attorneys drafting the letter to exclude "reference to any new

equity plans . . . [because the] letter [would be] going to a lot of people who no longer are with the Company and have nothing to do with any new plans." Doc. 97-7 at 3. This was, he explained in his declaration to the Court, to avoid creating an "impression that those former employees were eligible to participate in the 2013 CEVA Holdings LTIP" (discussed below). Doc. 97 at 6. While McEvoy does not recall reading the question and answer document, he received an email with an identically named attachment. Doc. 96-1 at 88:23–90:1.

The JPLs sent another letter on June 14, 2013 informing Management Investors that CIL was insolvent, listing the names of the Management Investors who had been represented as part of the bankruptcy proceedings, and stating that there was an involuntary Chapter 7 bankruptcy proceeding taking place against CIL in the Southern District of New York. Docs. 98-3; 112-39.

On March 4, 2014, McEvoy corresponded with the JPLs, now the Joint Official Liquidators, asking for documentation that his "investments [were] worthless" for "US tax purposes." Doc. 98-4 at 4. They confirmed with documentation, and McEvoy claimed a $10,000 loss in his tax returns for 2013. Docs. 96-7 at 2; 98-4.

Between 2013 and 2017, McEvoy discussed his loss multiple times, including with an attorney who advised him not to pursue a case, and with present and former CEVA employees. Doc. 96-1 at 37:20–46:22; 69:19–71:2.

### D. The 2013 LTIP

According to Schlanger, in order to "take steps to try and maintain morale at the company," the newly-formed CEVA Holdings "developed a new incentive program, which was formally adopted as the 2013 CEVA Holdings LTIP" ("2013 LTIP"). Doc. 97 at 3. CEVA employees with ranks of M-4 and higher received restricted stock options and penny stock options, and those ranked M-3 and below received cash awards. Id. The cash awards were in amounts "equal to 60% of [eligible] employees' prior net cumulative investments in CIL and vested over a five-year period." Doc. 97 at 4. The President of CEVA Americas instructed management to "not be shy of reminding [Management Investors] that their equity has been converted into new plans." Doc. 112-12 at 2 (emphasis in original).

CEVA Holdings' Third Quarter Interim Financial Statements, released November 18, 2013, announced that "[a] new management equity plan" including cash compensation "replaced the previous plan that was administered by CIL Limited and cancelled as part of the Recapitalization." Doc. 97-4 at 23. CEVA Holdings' 2013 Annual Report, released on February 28, 2014, also discussed the plan. Doc. 97-6 at 14–15.

The Loadstar, an U.K.-based logistics news source founded in 2012, published an article on Management Investors' losses due to the 2013 Transaction on August 19, 2013. Doc. 72-2. Titled "CEVA staff say they were

7

'press-ganged' into investment that lost them thousands," the article stated that Management Investors had invested between €10,000 and as much as €400,000, had felt pressured to invest in the 2006 LTIP, and that some had recovered 60 percent of their investment under a new equity scheme. Id. at 2, 4. The article also stated that some investors and lenders were considering or involved in litigation in the Cayman Islands and New York. Id. at 1, 2. The article quoted Schlanger stating that "we have given people the opportunity to participate in a new equity plan. If the company performs, they can perform as much or more than their initial investment. We think we've treated everyone fairly." Doc. 72-2 at 3. The Loadstar published another article using the same quote from Schlanger in 2015. Doc. 96-14.

### E. McEvoy's Original Complaint and New York Bankruptcy Court-Imposed Stay

On August 3, 2017, McEvoy filed a putative class action lawsuit ("Original Complaint") in this Court against Apollo Global Management, Turner, and Beith for losses, alleging self-dealing and fraudulent conversion. Doc. 1. The Trustee filed a motion in the New York Bankruptcy Court to enjoin McEvoy's case on October 18, 2017, arguing the claims McEvoy asserted were derivative claims that were property of CIL's estate. In re CIL Ltd., No. 13-11272-JLG, 2018 WL 878888, at *1 (Bankr. S.D.N.Y. Feb. 9, 2018). The Bankruptcy Court agreed, declaring McEvoy's putative class action in this Court "null and void ab

initio." Id. at *12. McEvoy moved the Bankruptcy Court to permit him to amend his complaint to assert direct claims, proposing an amended complaint that excluded defendants Turner and Beith and added defendants CEVA Group and Apollo Management VI. Doc. 31 at 4. On October 16, 2018, the New York Bankruptcy Court allowed McEvoy to file the proposed amended complaint. Doc. 31-2.

On December 7, 2018, McEvoy filed the Amended Class Action Complaint in this Court ("Amended Complaint"), alleging total losses of approximately €30,000,000. Doc 35. In addition to naming new defendants, the Amended Complaint alleges a new injury: that the named Defendants caused alleged class members "to not receive, or not equally receive, a required adjustment" as part of CEVA's 2013 restructuring. Id. ¶ 15. The Amended Complaint raised one claim under the Investment Advisors Act that the Court dismissed. Doc. 80. Defendants' Motion for Summary Judgment on the statute of limitations alone, Doc. 95, is now ripe.[1]

---

[1] On a motion for summary judgment, the Court cannot weigh evidence, but rather can only rule on undisputed facts in the record. When a motion for summary judgment is based on a statute of limitations, "the moving party must establish that 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party' on the timeliness issue." 100079 Canada, Inc. v. Stiefel Lab'ys, Inc., 954 F. Supp. 2d 1360, 1368 (S.D. Fla. 2013), aff'd, 596 F. App'x 744 (11th Cir. 2014) (quoting Ashcroft v. Randel, 391 F. Supp. 2d 1214, 1219 (N.D. Ga. 2005)). "Summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire

9

## II. ANALYSIS

### A. Statute of Limitations

Under the terms of the 2006 LTIP Agreement, Delaware law governs this dispute. The applicable statute imposes a three-year limitations period on claims for breach of fiduciary duty. DEL. CODE ANN. tit. 10, § 8106.[2] "The general law in Delaware is that the statute of limitations begins to run, i.e., the cause of action accrues, at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action." In re Dean Witter P'ship Litig., No. CIV. A. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998), aff'd, 725 A.2d 441 (Del. 1999). The Court determines that for the purposes of this Order on the statute of limitations, McEvoy's cause of action alleged in the Amended Complaint accrued under Delaware law on June 11, 2013, the date the 2013 LTIP became effective.[3] Doc. 97-6 at 14–15. Absent tolling, the limitations period expired on June 11, 2016.

---

more thoroughly into the facts in order to clarify the application of law to the circumstances." Eluv Holdings (BVI) Ltd. v. Dotomi, LLC, C.A. No. 6894-VCP, 2013 WL 1200273, at *4 (Del. Ch. Mar. 26, 2013).

[2] Under Delaware law, the result here will be the same regardless, whether this is addressed under the statute of limitations or the doctrine of laches. See Kraft v. WisdomTree Invs., Inc., 145 A.3d 969, 973–76 (Del. Ch. 2016) (explaining the application of the statute of limitations or laches in the Delaware Court of Chancery, and noting that courts generally apply the statute of limitations by analogy to cases where laches applies).

[3] See ¶ 15 of the Amended Complaint, which claimed that Defendants "caused members of the Management Co-Investors to not receive, or not equally

Because the New York Bankruptcy Court declared the Original Complaint void ab initio, Defendants argue that the filing date is that of the Amended Complaint, December 7, 2018. (Doc. 95 at 17 n.82). McEvoy argues that because the New York Bankruptcy Court permitted him to amend, the operative date of filing should be that of the Original Complaint on August 3, 2017.

Whether or not the Original Complaint is void, the claims raised in the Amended Complaint do not relate back. This Circuit views "Rule 15(c)(1) as incorporating state law relation-back rules when the law of that state provides the statute of limitations for an action." Saxton v. ACF Indus., Inc., 254 F.3d 959, 963 n.6 (11th Cir. 2001). Under Delaware law, new arguments of law relate back, but new facts generally do not. See Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC, No. 5140-CS, 2012 WL 3201139, at *18 (Del. Ch. Aug. 7, 2012) (finding that new disputed transactions that were otherwise identical to previously alleged transactions constituted time-barred new facts); id. at *18 n.156 (collecting cases distinguishing new allegations of fact, which are subject to the statute of limitations, and new allegations of law, which relate back). The key question is whether the preceding complaint put defendants "on

---

receive, a required adjustment during the 2013 Transaction." Doc. 35. Defendants may be correct that McEvoy "mistakenly" alleges that the 2013 LTIP was an adjustment to the 2006 LTIP, Doc. 95, but whether or not this was the case is not at question in this Motion.

11

notice" of the new claims. Quadrant Structured Prod. Co., Ltd. v. Vertin, No. 6990-VCL, 2015 WL 6157759, at *20 (Del. Ch. Oct. 20, 2015). The Amended Complaint adds new defendants and is based on a new factual premise: that the 2013 LTIP, including the cash awards, was in fact a continuation or "required adjustment" to employees' 2006 LTIP investments. Doc. 35 ¶ 15. This new claim does not relate back to the Original Complaint, and so the Original Complaint's August 3, 2017 date of filing does not apply.

On November 30, 2017, McEvoy informed the New York Bankruptcy Court that if not for the stay, he would file an Amended Complaint incorporating allegations relating to the 2013 LTIP in this Court. Doc. 112-46 at 3 n.1. At that point, Defendants had notice of McEvoy's new claims, but McEvoy could not file an amended complaint until the Bankruptcy Court permitted him to do so, which it did not do until October 2018. Therefore, the Court will constructively treat the date of filing of the operative Amended Complaint in this Court as November 30, 2017.

As the date of filing of the Amended Complaint is November 30, 2017, well after the date of expiration of the statute of limitations on June 11, 2016, McEvoy must allege and prove that his claim was tolled from June 11, 2013 to at least November 30, 2014 to be timely.

### B. Tolling Doctrines

Delaware has three doctrines that toll the statute of limitations: (1) inherently unknowable injuries; (2) fraudulent concealment; and (3) equitable tolling. In re Dean Witter, 1998 WL 442456, at *5–*6. McEvoy argues that "any or all theories available" apply. Doc. 112 at 22. The plaintiff "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." In re Dean Witter, 1998 WL 442456, at *6.[4] The plaintiff must plead "either that he was diligently and productively pursuing his rights before the statute of limitations expired or that he was precluded from doing so based on some unusual and unanticipated change in circumstances." Forman v. CentrifyHealth, Inc., No. CV 2018-0287-JRS, 2019 WL 1810947, at *9 (Del. Ch. Apr. 25, 2019). "What constitutes unreasonable delay and prejudice [for the delay in bringing a claim] are questions of fact that depend upon the totality of the circumstances." Deputy v. Deputy, No. CV 10874-VCZ, 2020 WL 1018554, at *47 (Del. Ch. Mar. 2, 2020) (quoting Hudak v. Procek, 806 A.2d 140, 153 (Del. 2002)).

The Delaware court has explained the three tolling doctrines and their application:

---

[4] The Court has noted that the plaintiff is supposed to plead a basis for tolling the statute of limitations, which McEvoy has not, but that his complaint may be amended. Doc. 81 at 22:4–9.

> Under the doctrine of inherently unknowable injuries, the statute [of limitations] will not run where it would be practically impossible for a plaintiff to discover the existence of a cause of action. No objective or observable factors may exist that might have put the plaintiffs on notice of an injury, and the plaintiffs bear the burden to show that they were blamelessly ignorant of both the wrongful act and the resulting harm.
>
> []
>
> Similarly, the statute of limitations may be disregarded when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth. Under this doctrine, a plaintiff must allege an affirmative act of actual artifice by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth.
>
> []
>
> Finally, the doctrine of equitable tolling stops the statute from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary. No evidence of actual concealment is necessary in such a case, but the statute is only tolled until the investor knew or had reason to know of the facts constituting the wrong.

In re Tyson Foods, Inc., 919 A.2d 563, 584–85 (Del. Ch. 2007) (quotation marks omitted).

By June 2013 McEvoy had already been let go from CEVA, had been informed that his shares in the 2006 LTIP were worthless, did not receive any notification from the company regarding the new LTIP, and was not a shareholder of the newly-formed CEVA Holdings, in whose financial statements the 2013 LTIP was discussed. The newspaper that mentioned the 2013 LTIP in

14

an article was a recently formed online source, not a paper of record. However, it is too much to say that it would be "practically impossible" for McEvoy to have discovered the grounds of his action: the 2013 LTIP was mentioned, briefly, in CEVA Holdings' financial reports, and in the Loadstar article. Therefore, the doctrine of inherently unknowable injuries does not toll the statute of limitations.

However, based on the record before the Court on the motion for summary judgment, a reasonable jury could find that there was fraudulent concealment because Defendants used "actual artifice" to prevent McEvoy from learning of his injury. In re Dean Witter, 1998 WL 442456, at *5. There is some evidence that Defendants attempted to conceal the existence of the 2013 LTIP from non-participating Management Investors. Schlanger stated that communications to former CEVA employees were intentionally different than those to present CEVA employees. Doc. 116-2 at 63:8-17. Defendants argue that these differences "demonstrate[] Defendants' good faith" and were intended to "avoid confusion." Doc. 117 at 6–7. This is not an undisputed fact. While much of McEvoy's fraudulent concealment argument relies on edits to the April 17, 2013 question and answer document, which McEvoy did not even recall reading, the document sheds light on CEVA executives' communications strategy and purposeful concealment of the 2013 LTIP to non-participating Management Investors. Doc. 98-2. There is a genuine question of material fact as to whether

there was actual artifice in concealing the creation of the 2013 LTIP that precludes summary judgment.

Finally, the doctrine of equitable tolling requires that the plaintiff "reasonably relied upon the competence and good faith of a fiduciary" until he had notice of his claim. In re Tyson, 919 A.2d at 585. "Underlying this doctrine is the idea that even an attentive and diligent investor relying, in complete propriety, upon the good faith of fiduciaries may be completely ignorant of transactions that . . . constitute self-interested acts injurious" to the plaintiff. In re Dean Witter, 1998 WL 442456, at *6. The Court has not heard argument on whether Defendants acted as fiduciaries to McEvoy and other Management Investors. Therefore, the issue is not ripe for summary judgment.

### C. Inquiry Notice

All three tolling doctrines only toll the statute of limitations until the plaintiff is on "inquiry notice . . . ." In re Dean Witter, 1998 WL 442456, at *8. Inquiry notice takes place "upon the discovery of facts constituting the basis of the cause of action . . . ." Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 860 A.2d 312, 319 (Del. 2004) (internal quotation marks omitted). Inquiry notice occurs when the plaintiff "encounter[ed] facts that reasonably should arouse suspicion" and "lead to an investigation capable of producing facts sufficient to allow the plaintiff to file a complaint capable of surviving a motion to dismiss." Gallagher Indus., LLC v. Addy, No. 2018-0106-SG, 2020 WL 2789702, at *13 (Del. Ch.

16

May 29, 2020). If McEvoy was on inquiry notice before November 30, 2014, three years before the constructive filing date of the Amended Complaint, his claim is time-barred.

Delaware courts are generally reluctant to permit an investor who has a "red flag[]" that they may have been injured to argue tolling, even if they do not know the full extent of their injuries. Gallagher, 2020 WL 2789702, at *13 (citation omitted). A red flag may come in the form of "inherently contradictory information" alerting an investor to a potential claim. In re Dean Witter, 1998 WL 442456, at *9. It may also be a communication signaling a change in the corporate structure, such as a letter announcing a "tremendous amount of change . . . ." Silverberg v. Padda, No. 2017-0250-KSJM, 2019 WL 4566909, at *11 (Del. Ch. Sept. 19, 2019) (internal quotation marks omitted) (citing documents in that case's record). It is not unreasonable to argue that McEvoy should have been on inquiry notice in 2013 when he was informed that his shares, which had previously been worth €50 each, were suddenly worth €0. McEvoy had the 2006 LTIP Agreement in his possession, which he alleges mandates adjustments to his investment. An online newspaper published an article mentioning that some Management Investors were receiving 60 percent of their initial investments back. Finally, McEvoy could see that CEVA continued to exist as an operating company after he was let go, to the point that it hired him temporarily to start up a new contract.

17

However, losing an investment would not necessarily put a reasonable investor on notice that others who had lost theirs were being given an opportunity to recover some of their lost value, especially in the face of repeated statements that CIL was worthless or that all other investors had lost all value. McEvoy was not a shareholder in CEVA Holdings and therefore cannot necessarily be expected to review its financial reports. The existence of one news article—especially one in a foreign, online news source that had only existed for a year—is not sufficient grounds to rule as a matter of law that McEvoy was on inquiry notice. Cf. Burrell v. Astrazeneca LP, No. CIV.A. 07C-01-412(SER), 2010 WL 3706584, at *6 n.64 (Del. Super. Ct. Sept. 20, 2010) (determining that articles published in papers of record including the New York Times and Wall Street Journal, combined with other other sources of information, provided notice). The Court is not prepared to rule as a matter of law that McEvoy was on inquiry notice as to his 2013 LTIP claims prior to November 30, 2014.

There are triable issues of material fact as to whether tolling applies to McEvoy's injury, and if so, when he was on inquiry notice.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Joint Motion for Summary Judgment (Doc. 95) is **DENIED**.

2. Plaintiff shall file a Second Amended Class Action Complaint that alleges the basis for his tolling arguments no later than **July 23, 2021**.

3. Defendants shall respond to the Second Amended Class Action Complaint no later than **August 20, 2021**. If so advised, Defendants may renew their motions to dismiss on grounds not addressed in the Court's previous Order (Doc. 80). The Court will wait to require a Case Management and Scheduling Report until the pleadings are settled.

**DONE AND ORDERED** in Jacksonville, Florida the 29th day of June, 2021.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

agb
Copies:

Counsel of record

19